IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL PATTERSON, individually and on behalf of a class of all persons and entities similarly situated, | : : : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 2:25-cv-01774-MRH |
| | : | |
| WAJDA LAW GROUP, APC, RECOVERY LAW GROUP APC, and NICHOLAS WAJDA, | : : : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF WAJDA LAW GROUP'S MOTION TO DISMISS DANIEL PATTERSON'S COMPLAINT PURSUANT TO FED.R. CIV. P. RULE 12(b)(6)**

WADE CLARK MULCAHY LLP
*Attorneys for Defendant Wajda Law Group, APC*
1515 Market Street, Suite 2050
Philadelphia, PA 19102
(267) 239-5526

Robert J. Cosgrove, Esq.
Partner

Simone Henderson, Esq.
Associate

## TABLE OF CONTENTS

**INTRODUCTORY STATEMENT** ...................................................................................... **4**

**FACTUAL AND PROCEDURAL BACKGROUND** ..................................................... **5**

**LEGAL ARGUMENT** ........................................................................................................ **6**

    I.    Patterson's Claim Against WLG Must be Dismissed for Failing to State a Claim Under Fed. R. Civ. P. Rule 12(b)(6). ................................................................................................ 6

        A.    Standard of Review ........................................................................................ 6

        B.    There Is No Basis Under the TCPA For a Finding of Liability Against WLG In Its Own Right. ...................................................................................................................... 7

        C.    Patterson Did Not Adequately Plead Any Claims Under Which WLG Could Be Held Responsible for the Conduct of RLG. ................................................................. 10

**CONCLUSION** ................................................................................................................ **14**

## TABLE OF AUTHORITIES

**Cases**

*Am. Bell Inc. v. Fed'n of Tel. Workers of Pennsylvania*, 736 F.2d 879, 886 (3d Cir. 1984)...........11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................. 6

*Atl. Hydrocarbon, LLC v. SWN Prod. Co., LLC*, No. 4:17-CV-02090, 2019 WL 928996 (M.D. Pa. Feb. 26, 2019) ................................................................................................ 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) ....................................... 6

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), *as revised* (Feb. 9, 2016)................... 9

*Doyle v. Matrix Warranty Sols., Inc.*, 679 F. Supp. 3d 42, 45–46 (D.N.J. 2023)......................... 10

*Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-211 (3d Cir. 2009) .............................. 6

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013) ................. 6

*J.B. Hunt Transp., Inc. v. Liverpool Trucking Co.*, No. 1:11-CV-1751, 2013 WL 3208586 (M.D. Pa. June 24, 2013) ............................................................................................... 12

*Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503 (3d Cir.1994).......................... 13

*Klein v. Com. Energy, Inc.*, 256 F. Supp. 3d 563, 576 (W.D. Pa. 2017) ................................... 9, 10

*Miners, Inc. v. Alpine Equip. Corp.*, 722 A.2d 691 (Pa. Super. Ct. 1998) ................................... 13

*Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) ........................................11

*Seven Springs Mountain Resort, Inc. on behalf of Sikirica v. Hess*, No. 3:21-CV-6, 2022 WL 1004178 (W.D. Pa. Apr. 4, 2022)..................................................................... 12, 13

*Warren Gen. Hosp. v. Amgen Inc.*, 643 F. 3d 77, 84 (3d Cir. 2011)................................................. 6

*Zubik v. Zubik,* 384 F.2d 267, 272 (3d Cir.1967) ........................................................................11


**Statutes**

Telephone Consumer Protection Act ["TCPA"], 47 U.S.C. § 227(b)........................................ 7, 8


**Rules**

Fed. R. Civ. P. 12(d)................................................................................................. 6
Fed. R. Civ. P. Rule 56(a)........................................................................................ 6

**INTRODUCTORY STATEMENT**

Plaintiff Daniel Patterson ("Patterson") first claimed that he received phone calls and voicemail messages from Nicholas Wajda on behalf of Wajda Law Group ("WLG") in violation of the Telephone Consumer Protection Act. Upon being notified several times through both informal discussions and formal court filings, and following a limited discovery phase, Plaintiff now acknowledges via Amended Complaint that it was, instead, Recovery Law Group ("RLG") that directed the calls of which Patterson complains. Despite the matter of the proper defendant being clarified, Patterson maintains that WLG should still be held liable for the alleged violations.

Patterson sent three online inquiries to RLG's website, requesting a consultation for bankruptcy-related legal assistance. Patterson further called into a live phone line and provided his personal contact information for the same purposes. However, despite this, when he received calls in response to the inquiries, Patterson filed a lawsuit alleging that he received telemarketing communications in violation of the Telephone Consumer Protection Act.[1] Patterson alleges that WLG, RLG, and Nicholas Wajda, owner of the two firms, in his personal capacity, should all be held liable for the calls.

Patterson has not alleged that WLG directly made the calls, has not made any argument as to the existence of an agency relationship between the firms such that the theory of vicarious liability applies, and has failed to sufficiently plead that WLG and RLG are so intertwined that it justifies piercing of the corporate veil to find WLG responsible for the actions of a separate entity. As such, WLG respectfully submits that Patterson has failed to state a claim upon which relief can

---

[1] Wajda Law Group maintains its position that Daniel Patterson consented to the calls at issue, so there is both no violation of the statute and no grounds for a class action lawsuit. However, for the purposes of the instant Motion, WLG focuses solely on the deficiencies on the face of the Amended Complaint.

be granted under Fed. R. Civ. P. Rule 12(b)(6) and, accordingly, the matter should be dismissed as it pertains to WLG.

**FACTUAL AND PROCEDURAL BACKGROUND**

WLG and RLG are both law firms owned by Nicholas Wajda that specialize in providing personal bankruptcy assistance. *See* **Exhibit A:** Transcript of Deposition of Nicholas Wajda ["Exhibit A"], pg. 8:3–9; *see also* **Exhibit B:** First Amended Class Action Complaint, ECF Doc. No. 033 ["Complaint"], ¶ 6–8. WLG operates solely in California and RLG operates in several other states, including Pennsylvania. *See id*; *id* at pg. 8:19–9:15. Aside from sharing their principal, Nicholas Wajda, the firms have no legal relationship to each other. *See id* at pg. 9:12–10:8.

Patterson alleges that he received two phone calls on August 20, 2024 and three phone calls on October 7, 2025 and rejected all calls. *See* Complaint, ¶ 18–22. Patterson received two voicemail messages after the calls were rejected, identifying the caller as Nicholas Wajda and stating that he was reaching out in reference to an online inquiry received for bankruptcy-related legal services. *Id* at ¶ 22. The parties dispute whether Patterson filled out the online inquiry and, by doing so, provided his consent to be contacted. *See* **Exhibit C:** Fed. R. Civ. P. 26(f) Report of the Parties, ECF Doc. No. 017.

Patterson filed the initial Complaint on November 14, 2025, solely against WLG. *See* **Exhibit D:** Class Action Complaint, ECF Doc. No. 001. As per this Court's instruction, a limited discovery period was permitted to allow for depositions to be taken solely focused on the issue of which entity(ies) are the proper Defendants in this action. *See* **Exhibit E:** Parties' Joint Motion for Extension of Time for Deadlines, ECF Doc. No. 027. During this time period, two depositions took place, notably including a deposition of Nicholas Wajda as representative of WLG. *See* Exhibit A.

## LEGAL ARGUMENT

### I.   Patterson's Claim Against WLG Must be Dismissed for Failing to State a Claim Under Fed. R. Civ. P. Rule 12(b)(6).

*A.  Standard of Review*

FRCP 12(b)(6) dismissal is appropriate when "accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F. 3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); Fed. R. Civ. P. Rule 12(b)(6). Facial plausibility is found when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts have established a two-prong test for assessing facial plausibility: (1) separate factual and legal elements of the claim, accept facts as true and discard legal conclusions; (2) determine if facts as alleged sufficiently show that plaintiff has a "plausible claim for relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-211 (3d Cir. 2009).

Other standards, particularly those contained under Fed. R. Civ. P. Rule 56 regarding summary judgment, may be appropriate if more factual development is required beyond what is contained in, attached to, or referenced within the complaint. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013); Fed. R. Civ. P. 12(d).[2]  If the Rule 56 standard applies, the movant must "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a).

---

[2] The transcript from the deposition of Nicholas Wajda, taken during the limited discovery phase conducted in anticipation of the filing of Plaintiff's amended complaint, has been attached hereto as Exhibit A. Further, for the sake of additional background information, this Motion refers to filings in this matter submitted before the Amended Complaint. To the extent that this constitutes additional factual development beyond what is contained in the Complaint, WLG acknowledges that the summary judgment standard under Fed. R. Civ. P. Rule 56 may be appropriately applied in this circumstance, even though the request for dismissal is posed in the form of a Fed. R. Civ. P. 12(b)(6) motion.

    B.  *There Is No Basis Under the TCPA For a Finding of Liability Against WLG In Its Own Right.*

       i.     WLG Did Not "Make Any Calls" Under the Statute.

The sole cause of action raised in the Amended Complaint is under the Telephone Consumer Protection Act ("TCPA"). Generally, the TCPA imposes restrictions on calls made using "using any automatic telephone dialing system or an artificial or prerecorded voice." Telephone Consumer Protection Act ["TCPA"], 47 U.S.C. § 227(b)The particular language of the statute at issue is as follows:

**(b) Restrictions on use of automated telephone equipment**

**(1) Prohibitions**

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--

    **(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--

        **(i)** to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);

        **(ii)** to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

        **(iii)** to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

    **(B)** to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely

> pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B)…

*Id.* The operative phrase, for purposes of this Motion, is "to make any call."

One cannot dispute that the calls complained of were made by and/or on behalf of RLG. WLG is a California-based law firm that operates, reaches out to clients, accepts clients, and conducts the entirety of its practice solely in and related to California. *See* Exhibit A, pg. 8:8–10. RLG is a national law firm that operates in approximately thirty-eight states, including Pennsylvania. *See* Complaint, ¶ 7; *see also* Exhibit A, pg. 8:19–9:6. Patterson is located in Pennsylvania. *See* Complaint, ¶ 5. Thus, hypothetically, if Patterson had become a client following the phone calls, he would have undisputably become a client of RLG because WLG does not practice in the state where Patterson is located. In fact, Patterson openly admits in the Amended Complaint that RLG is the entity that made the calls. *See* Complaint, ¶ 37. Under a plain-meaning interpretation of the statute, WLG cannot be held liable for the alleged violations because the parties both agree that "the calls were made by [RLG], for [RLG], for [RLG's] benefit," and "paid for by [RLG]," which is what confers liability under the TCPA.

However, despite this, Patterson seems to argue that WLG still remains directly liable because it owned the account for the calling software that RLG used. *See* Complaint, ¶ 38. During the deposition, Mr. Wajda stated that WLG is the business entity that originally set up the account with a software provider known as ICE Mortgage Technology ("ICE") that provides the system used to call out to prospective clients. *See* Exhibit A, pg. 32:15–16. Mr. Wajda further testified that RLG uses the account originally set up by WLG and pays WLG back for the entire cost of maintaining the account. *See* Exhibit A, pg. 32:15–20. It is on this basis that Patterson seems to allege that WLG should remain directly liable, despite the parties agreeing that WLG did not make

the calls at issue. It is unclear on what grounds Patterson is attempting to claim that merely owning an account is violative conduct when WLG had no active part in making the calls at issue.

Courts have been asked to assess what "mak[ing] any call" means in the context of the TCPA for purposes of, for example, assessing whether a third party calling on the defendant's behalf constitutes "mak[ing] a call," or whether a text message constitutes "mak[ing] a call." *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), *as revised* (Feb. 9, 2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."); *Klein v. Com. Energy, Inc.*, 256 F. Supp. 3d 563, 576 (W.D. Pa. 2017) ("[C]alls made by a third party on behalf of a company [are treated] as if the company itself made the calls."). Both examples assess applicability of the statute to a party that affirmatively directed a form of communication to the plaintiff. It would be a completely novel position to assert that merely owning an account on a phone software that was, effectively, leased and used by an entirely separate party constitutes "mak[ing] a call." To the extent that Patterson is trying to raise a sort of vicarious liability or other agency-based theory of liability based on an obligation tied to ownership of the account and permission given to RLG to use it for allegedly violative conduct (upon which further discussion is below), regardless of the merit of such a claim, it does not constitute direct liability as he asserts in the complaint.

In sum, WLG respectfully submits that Patterson's complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. Rule 12(b)(6) because Patterson admits that a different party was responsible for "mak[ing]" the calls at issue and has not sufficiently plead any other method of imposing direct liability under the TCPA.

C. *Patterson Did Not Adequately Plead Any Claims Under Which WLG Could Be Held Responsible for the Conduct of RLG.*

i.    Patterson Has Not Plead, Nor Could He Successfully Plead, that Vicarious Liability Applies.

Although the TCPA is silent as to the possibility of vicarious liability, many courts have read an implied vicarious theory of liability into the interpretation of TCPA, whereby one entity can be held responsible for the violative conduct of another in the context of an agency relationship. *See Doyle v. Matrix Warranty Sols., Inc.*, 679 F. Supp. 3d 42, 45–46 (D.N.J. 2023) (providing overview of court cases that read an implied theory of vicarious liability into the TCPA). Particularly, the FCC and courts have established that "calls made by a third party on behalf of a company [are treated] as if the company itself made the calls." *Klein v. Com. Energy, Inc.*, 256 F. Supp. 3d 563, 576 (W.D. Pa. 2017). However, Patterson does not explicitly allege here vicarious liability, nor an agency relationship.

Even if, *arguendo*, one was to consider a potential vicarious liability claim, it would fail in this circumstance. If there is no agency relationship, there can be no vicarious liability. *See Doyle*, 679 F. Supp. 3d at 45–47. Courts that allow vicarious liability under the TCPA often use the Restatement (Third) of Agency, under which there are three principal theories of vicarious liability. *See id* at 46. Common to all three theories is the requirement that the agent is acting on behalf of the principal. *See id*. Again, the calls were made by RLG, to a prospective client of RLG, for the purpose of following up on an inquiry received by RLG. Patterson's own admission that RLG had "the calls made by it, for it, for its benefit, paid for by it, and to advertise its bankruptcy and debt relief legal services" necessarily negates any claim that RLG was making the calls on behalf of WLG in any capacity. Complaint, ¶ 38.

Plaintiff has not adequately pleaded the existence of an agency relationship between RLG and WLG, and accordingly cannot plead any claims based in vicarious liability, such that there is still no basis for finding liability against WLG under the TCPA. As such, WLG submits that this matter, insofar as it concerns WLG, should be dismissed under Fed. R. Civ. P. Rule 12(b)(6).

ii.    To the Extent that the Complaint Implies that the Corporate Veil Between WLG and RLG Should Be Pierced, He Has Not Adequately Pleaded a Sufficient Connection.

Patterson makes yet another implied, yet not explicitly stated, attempt to allege that WLG should be held liable by using language suggesting that he seeks to pierce the corporate veil to impose liability on WLG for the actions of RLG. Patterson states that there are shared characteristics of both firms such that that WLG and RLG "operate as an integrated law firm enterprise" and liability should be imposed on both entities by virtue of a "deliberate intermingling of the two entities' operations such that each is responsible for the conduct of the other." Complaint, ¶ 40, 42.

"The corporate form was created to allow shareholders to invest without incurring personal liability for the acts of the corporation. These principles are equally applicable when the shareholder is, in fact, another corporation…" *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001). The Third Circuit has found that there is a very high bar for finding that piercing the corporate veil is appropriate. *See Am. Bell Inc. v. Fed'n of Tel. Workers of Pennsylvania*, 736 F.2d 879, 886 (3d Cir. 1984). "[T]he appropriate occasion for disregarding the corporate existence occurs when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime" and "the court may only pierce the veil in 'specific, unusual circumstances', lest it render the theory of limited liability useless." *Id* (quoting *Zubik v. Zubik,* 384 F.2d 267, 272 (3d Cir.1967)).

To the extent that Patterson's complaint uses language that implies the single entity theory (also known as enterprise theory) of corporate veil piercing, there is no precedent to support the application of that theory to questions of federal law. Case law from the Third Circuit only references these alternative theories when applied to claims based in Pennsylvania state law, which is not at issue in this matter. *See J.B. Hunt Transp., Inc. v. Liverpool Trucking Co.*, No. 1:11-CV-1751, 2013 WL 3208586 (M.D. Pa. June 24, 2013) (analyzing the single entity theory when the underlying claim was based in Pennsylvania state law); *see also Seven Springs Mountain Resort, Inc. on behalf of Sikirica v. Hess*, No. 3:21-CV-6, 2022 WL 1004178 (W.D. Pa. Apr. 4, 2022).[3] The proper method of assessment of whether piercing the corporate veil is appropriate in Pennsylvania federal courts for questions of federal law is under the alter ego theory. *See Seven Springs*, No. 3:21-CV-6, 2022 WL 1004178 (W.D. Pa. Apr. 4, 2022).

Pennsylvania federal courts have developed a list of eight non-exclusive factors used to determine whether one business entity may be held liable for the actions of another entity, following the alter ego theory:

> "(i) its subsidiary's gross undercapitalization for its purpose; (ii) failure to observe corporate formalities; (iii) nonpayment of dividends; (iv) the insolvency of the subsidiary; (v) siphoning of funds of the corporation by the dominant stockholder; (vi) nonfunctioning of other officers or directors; (vii) absence of corporate records; and (viii) whether the corporation is merely a facade for the operations of the dominant stockholder or stockholders."

---

[3] Although the single entity theory is not properly applied in this circumstance, even if it were, Patterson has failed to sufficiently plead under this theory. "To state a claim under the 'enterprise entity' or 'single entity' theory, a plaintiff must, *inter alia*, show that it is an 'involuntary creditor[ ]' of the defendant." *Atl. Hydrocarbon, LLC v. SWN Prod. Co., LLC*, No. 4:17-CV-02090, 2019 WL 928996 (M.D. Pa. Feb. 26, 2019). There is no suggestion, much less a concrete allegation, that RLG is an involuntary creditor of WLG.

*Id*. A full analysis of every factor is unnecessary in this circumstance because several of the factors (namely, (i), (iii), (iv), (v), and (viii)) are predicated upon the assumption that there is a parent-subsidiary relationship between the two entities at issue. "The alter ego theory is applicable only where the individual or corporate owner controls the corporation to be pierced and the controlling owner is to be held liable." *Miners, Inc. v. Alpine Equip. Corp.*, 722 A.2d 691 (Pa. Super. Ct. 1998) (citing *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503 (3d Cir.1994)) (emphasis in original). Mr. Wajda, owner of WLG and RLG, testified under oath that there is no corporate link between the two entities; they are two entirely separate, legally distinct businesses. *See* Exhibit A, pg. 8:3–10:8. Mr. Wajda in his individual capacity is the sole owner of RLG, thus, necessarily, WLG is not a parent, owner, stockholder, or otherwise in any role that would make the alter ego theory applicable in this circumstance. *See id*. Therefore, it is improper to pierce the corporate veil under the alter ego theory on the established facts, and there is no basis for finding WLG liable for the acts of RLG.

As the corporate veil cannot be properly pierced as to WLG based on the facts contained in the Amended Complaint, Patterson has not adequately pleaded any basis for WLG to be held liable for the conduct of RLG. Accordingly, the claims as they pertain to WLG should be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(6).

## CONCLUSION

For the reasons set forth above, Wajda Law Group, APC respectfully requests that this Court grant its motion to dismiss the Amended Complaint with prejudice insofar as it concerns WLG, and grant WLG such other relief as this Court deems equitable and just.

Dated: Philadelphia, PA
       June 6, 2026

Respectfully Submitted,

WADE CLARK MULCAHY LLP

*/s/ Robert J. Cosgrove*
Robert J. Cosgrove, Esq.

*/s/ Simone Henderson*
Simone Henderson, Esq.
