## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL PATTERSON**, individually and on behalf of a class of all persons and entities similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**WAJDA LAW GROUP, APC, RECOVERY LAW GROUP APC, and NICHOLAS WAJDA**,<br><br>*Defendants.* | Case No. 2:25-cv-01774-MRH |

### PLAINTIFF DANIEL PATTERSON'S BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANT WAJDA LAW GROUP'S MOTION TO DISMISS

Attempts by those who benefit from illegal robocalling campaigns to escape liability by pointing to corporate structure are nothing new. Trial and appellate courts have had little trouble rejecting such tactics. Defendant Wajda Law Group, APC ("WLG") now makes a bold assertion: that Plaintiff Daniel Patterson has failed to adequately plead WLG's liability for the prerecorded calls at issue, despite the Amended Complaint's detailed factual allegations establishing WLG as the account subscriber and calling infrastructure provider through which the illegal calls were transmitted, and despite WLG's own sole owner personally recording and uploading the very prerecorded messages used in those calls. Questions over which corporate entity should bear TCPA liability for calls placed using shared infrastructure under common ownership are not appropriate for resolution at the pleadings stage. They require discovery and jury determination. And Plaintiff's well-pled allegations of a shared enterprise operating under common ownership, shared telephone numbers, shared lead vendors, and shared calling infrastructure are more than sufficient to survive a motion to dismiss. The motion ought to be denied.

1

## FACTUAL BACKGROUND

Starting on August 20, 2024 and continuing to October 7, 2025, Plaintiff Daniel Patterson received at least five prerecorded calls from Defendants using telephone number (724) 246-7760. Am. Compl. ¶¶ 18–22. Defendants left two identical voicemail messages, each identifying the caller as "Nicholas Wajda" and soliciting Plaintiff concerning bankruptcy-related legal services. *Id.* ¶¶ 22–23. The calls were made using an ICE Mortgage Technology account subscribed in WLG's name, paid for in its entirety by Recovery Law Group ("RLG"), accessed and operated by RLG, and supervised by Nicholas Wajda in his dual capacity as sole owner of both entities. *Id.* ¶¶ 29–36, 41.

WLG and RLG operate as an integrated law firm enterprise under the sole ownership, control, and direction of Nicholas Wajda. *Id.* ¶ 40. The two entities share marketing decision-making (Wajda personally), share telemarketing infrastructure (the ICE Mortgage Technology account), share lead generation vendors (Aspiring Media Solutions), and share at least one telephone number, including on both websites, used for both intake and bar registration purposes, ((877) 550-0003). *Id.* Nicholas Wajda personally recorded the prerecorded messages used in the calls, personally uploaded those recordings into the ICE Mortgage Technology system, and personally controlled the marketing decisions of both entities. *Id.* ¶¶ 25–27, 39.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled

to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly,* 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face," not merely because the defendant proffers some contrary facts. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

## ARGUMENT

### I.  WLG Waived Its Rule 12(b)(6) Challenge by Providing an Untimely Answer to the Allegations in the Original Complaint.

Before reaching the merits, WLG's Motion fails at the threshold. Rule 12(b) requires that a motion to dismiss "be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). WLG did not move to dismiss the original Complaint filed in this matter. Instead, following this Court's authorization of a limited discovery period focused on identifying any additional proper defendant(s), WLG submitted to a deposition of Nicholas Wajda as its representative and Plaintiff filed the First Amended Complaint. See MTD at 5. Only then, after the Amended Complaint was filed, did WLG file the instant motion. WLG had the opportunity to challenge the original Complaint by motion and did not avail itself of that right. That choice is not without consequence.

3

The Amended Complaint did not add any new claims or theories against WLG that were not present in or deducible from the original Complaint. The original Complaint named WLG as a defendant, alleged that it was the subscriber and account holder of the ICE Mortgage Technology platform used to place the calls, and sought to hold WLG directly liable for the prerecorded calls at issue. The Amended Complaint does not depart from that theory. It incorporates additional factual detail, gleaned from the very deposition testimony that WLG produced during the limited discovery period, to flesh out the same pre-existing claims.

Allegations added to bolster or flesh out pre-existing claims, even if new and specific, do not create a new basis on which to assert a 12(b)(6) defense by post-answer motion. *See, e.g.*, *Holt v. Pennsylvania*, No. CV 10-5510, 2011 WL 13141442, at *3 (E.D. Pa. July 18, 2011) (holding that amended complaint did not revive the right to file a post-answer motion to dismiss because the amended complaint was "essentially identical" to the original one and defendant answered). As courts applying Rule 12(b) have explained, allowing a post-answer motion to dismiss on an amended complaint where the amendment merely substantiates existing claims would render the Rule 12(b) restriction on post-answer motions meaningless. *See id.* That rule reflects the broad consensus among federal courts and leading treatises. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1388 (3d ed. 2019) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in a timely fashion prior to the amendment of the pleading.").

WLG's Motion raises challenges to the Amended Complaint that could have been raised, and should have been raised if WLG desired, against the original Complaint. The original Complaint named WLG as the sole defendant and squarely alleged its liability for the calls at issue. WLG possessed, at the time it chose not to file a motion to dismiss the original Complaint,

all of the facts it now relies upon in the instant Motion. It knew whether it was the subscriber on the ICE Mortgage Technology account, it knew the relationship between WLG and RLG, and it knew the extent of Nicholas Wajda's personal involvement in the marketing decisions of both firms. Indeed, the very deposition testimony on which WLG now heavily relies to argue that WLG and RLG are distinct entities was testimony produced by WLG's own principal during the limited discovery period authorized by this Court. WLG had no excuse for failing to bring the arguments in the instant Motion against the original Complaint. The Amended Complaint changed nothing in the nature of the claims that could plausibly revive WLG's waiver.

WLG's Motion should therefore be denied as untimely. Regardless of whether this Court denies the Motion outright as untimely or converts it to a motion for summary judgment, WLG is not entitled to the relief it seeks, for the substantive reasons set forth below.

**II.  Questions Over Which Entity "Made" the Calls Are Factual Disputes Inappropriate for Resolution at the Pleading Stage, and Plaintiff Has Adequately Alleged WLG's Direct Liability.**

WLG's motion is, at its core, a "we didn't do it" defense dressed up as a challenge to the sufficiency of Plaintiff's pleading. But Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002). That is precisely what WLG attempts to do here, making a conclusory argument that Plaintiff has failed to state a claim because, in WLG's telling, only RLG physically *made* the calls. But that argument begs the question: if the calling infrastructure was WLG's account, the recording used was personally made and uploaded by WLG's sole owner, and the campaign ran through WLG's platform with ICE, in what sense was WLG a stranger to the calls? Plaintiff is entitled to discovery to develop these facts, and dismissal at this stage would be premature.

The Amended Complaint gives more than adequate notice of Plaintiff's claims and the grounds upon which they rest. Plaintiff has alleged, with specificity, that: (1) the ICE Mortgage Technology account used to place the calls was subscribed in WLG's name, Am. Compl. ¶ 29; (2) WLG permitted RLG to use that account for the very telemarketing calls at issue, *id.* ¶¶ 30-35; (3) the calls were transmitted *through* WLG's account, *id.* ¶ 38; (4) Nicholas Wajda, the sole owner of both entities, personally recorded the prerecorded voice messages, personally uploaded them into the system, and personally directed the entire campaign, *id.* ¶¶ 25–27; and (5) WLG and RLG share marketing decisions, lead vendors, telephone numbers, and calling infrastructure such that they operate as "an integrated law firm enterprise," *id.* ¶ 40. Taking these well-pled facts as true, as the Court must at this stage, Plaintiff has plausibly alleged that WLG is directly liable for the calls. Ultimately, a jury will have to determine whether these facts, and others developed through discovery, are sufficient for a finding of direct, vicarious, or "on behalf of" liability under the TCPA. They are certainly not suited for resolution now.

As Judge Weilheimer of the Eastern District of Pennsylvania recently observed in a strikingly similar situation, where a defendant sought dismissal by arguing it was not the entity that placed the calls at issue:

> The grounds from which [defendant] seeks dismissal are essentially coterminous with Plaintiffs theory of liability against it. Effectively, [defendant] seeks dismissal by saying 'we didn't do what the Complaint says we did!' That may well be true. But the sort of discovery which would be needed to aid an early jurisdictional dismissal on such fact-laden grounds would be barely less burdensome (if at all) than that needed to resolve the claims against [defendant] on their merits. For that reason, the Court thinks it would not be in the interest of judicial economy to create dual discovery tracks.

*Murch v. Quest Health Solutions, LLC,* No. 2:24-cv-05478-GAW, ECF No. 39 (E.D. Pa. June 2, 2025). The Court should similarly hold here.

WLG repeatedly relies upon deposition testimony and factual assertions outside the four corners of the Amended Complaint, arguing the summary judgment standard should apply rather than the typical motion to dismiss pleading standard. MTD at 6 n.2. But if WLG believes resolution of its arguments requires consideration of deposition testimony and other extra-pleading evidence, that merely confirms that the issues it raises are factual rather than pleading deficiencies. At the Rule 12(b)(6) stage, the Court must accept Plaintiff's allegations as true and may not resolve factual disputes based upon Defendant's preferred version of events. *Connelly,* 809 F.3d at 786-87. WLG cannot simultaneously contend that Plaintiff has failed to state a claim while relying upon discovery materials to contradict the facts alleged in the Amended Complaint.

Any contention that Defendants have substantively shown that WLG was not instrumental in making the violative calls fails as well. WLG insists that merely "owning an account" on calling software "leased and used" by a separate party cannot constitute "making" a call under the TCPA. MTD at 9. But this artificially narrows both the statute and the Amended Complaint's allegations. Plaintiff does not allege that WLG *merely* owned the account. He alleges that WLG was the subscriber of record, that WLG permitted RLG's use of that account to place illegal calls, and that those calls were transmitted *through* WLG's platform on an account with ICE in WLG's name, all while WLG's own sole owner personally recorded and uploaded the prerecorded messages. Am. Compl. ¶¶ 29, 33, 38-39. Whether these facts establish direct liability, vicarious liability, joint enterprise liability, or "on behalf of" liability under the TCPA, is a question for a fuller factual record, not a basis for dismissal at the pleadings stage.

Nor does the TCPA confine liability for "mak[ing]" a call to the entity whose employee physically presses the button. The FCC has long explained that a person "initiates" a call in one of two ways: by "tak[ing] the steps necessary to physically place a telephone call," or by being

7

so involved in the placing of a specific telephone call as to be "deemed to have initiated the call through another." *In re Joint Petition Filed by Dish Network, LLC,* 28 FCC Rcd. 6574, 6583, 6594 n.81 (2013). And from its earliest TCPA rulemakings, the Commission has made clear that an entity demonstrating "a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions" bears responsibility for the resulting calls. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,* 7 FCC Rcd. 8752, 8780 (1992). The Amended Complaint pleads precisely that involvement. It pleads that WLG subscribed to the ICE dialing platform, maintained the account, knowingly furnished it to RLG for outbound telemarketing, and, through its sole owner, personally created and uploaded the very prerecorded messages transmitted through it, messages that directed individuals to call a toll free number used by both WLG and RLG. Am. Compl. ¶¶ 25–35, 39. Whether that involvement renders WLG "so involved in the placing" of the calls as to have made or initiated them is a quintessentially factual question of degree to be evaluated by a jury, not one that can be resolved against Plaintiff on the pleadings.

Courts likewise routinely hold that it is reasonable, indeed, natural, to infer that the subscriber of the account and telephone number used to place a call, like WLG here, is the party that made the call. *See, e.g.*, *Bird v. Pro Star Builders, Inc.,* No. 2:22-cv-03610, 2022 WL 18216007, at *3 (C.D. Cal. Nov. 28, 2022) ("it is reasonable to infer that the same caller is responsible for calls from the same number"); *Moore v. Healthcare Sols., Inc.,* No. 21-cv-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022) ("Does Healthcare Solutions share a phone number with someone else? Unlikely."); *Bradshaw v. CHW Grp., Inc.*, 763 F. Supp. 3d 641, 646 (D.N.J. 2025) (when a caller identifies himself, it is plausible to conclude that he is who he says he is). That inference is doubly compelling here, where the account was subscribed in WLG's

8

name and the voicemails identified the caller as "Nicholas Wajda," WLG's sole owner, speaking in a message he personally recorded and personally uploaded. Am. Compl. ¶¶ 22, 25-27, 29. A corporation can act only through natural persons, and the natural person on these calls was WLG's own principal. Identifying which individual physically transmitted a call has never been required to plead direct TCPA liability against a company. If it were, no company could ever be sued under the TCPA without first naming the responsible employee.

Furthermore, WLG's cramped reading of the statute would create a troubling incentive. A party could design a calling campaign, personally record its own prerecorded messages, subscribe the calling platform under a shell company name, and then have each entity engage in finger pointing as to what entity is the nominal "maker" of the calls. The TCPA was not designed to be defeated by such arrangements. As courts have recognized, rewarding defendants for structuring their affairs to obscure who is responsible for illegal calls "would reward robocallers for attempting to obfuscate their identity in order to prevent TCPA liability" and would "effectively immunize savvier TCPA violators from liability—i.e., those with the wherewithal and means to use middlemen—or a series of increasingly removed middlemen—to solicit business through prohibited robocalling operations." *Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363-OLG (HJB), 2024 WL 3100773, at *13 (W.D. Tex. May 23, 2024) (denying motion to dismiss in TCPA case against multiple law firms). And as this Court has confirmed, a defendant "might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation." *Abramson v. Josco Energy USA, LLC,* No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022).

9

**III.  WLG's Vicarious Liability and Corporate Veil Arguments Are Premature or Entirely Inapplicable in TCPA Cases.**

WLG devotes much of its Motion to arguing that Plaintiff has not adequately pleaded either vicarious liability or a sufficient basis to pierce the corporate veil between WLG and RLG. MTD at 10-13. Both arguments suffer from the same fundamental defect. They ask this Court to resolve inherently fact-intensive questions that are not ripe for determination at the pleadings stage and in fact are most appropriately the province of a jury. *See Beil v. Telesis Const., Inc.*, 11 A.3d 456, 467 (Pa. 2011). Whether an agency or principal-agent relationship exists between two corporate entities, and whether the degree of intermingling between those entities is sufficient to pierce the corporate veil (if that is required at all in a TCPA case), are questions that depend on a full factual record developed through discovery, not on the allegations of a complaint viewed in isolation. *See Doe v. St. John's Episcopal Par. Day Sch., Inc.*, 997 F. Supp. 2d 1279, 1289 (M.D. Fla. 2014) (questions over vicarious liability were premature at the pleading stage and were more appropriate for summary judgment); *Wichita Destination Devs., Inc. v. Focus Hosp. Servs., LLC*, 365 F. Supp. 3d 1172, 1179 (D. Kan. 2019) ("[r]esolving this issue [alter ego] would involve questions of fact which go beyond the scope of the Court's ruling on a motion to dismiss").

At the pleadings stage, Plaintiff need only allege facts giving rise to a plausible inference that a sufficient basis for TCPA liability, either direct liability, vicarious liability under the principles of actual authority, apparent authority or ratification, or "on behalf of" TCPA liability exists; the plaintiff is not required to prove his theory of liability at the pleadings stage. *Katz v. Allied First Bank, SB*, No. 22 C 5277, 2026 WL 636723, at *7 (N.D. Ill. Mar. 6, 2026). Plaintiff has done so here, alleging a single owner directing the marketing of both firms, shared calling infrastructure subscribed in one firm's name and paid for by the other, shared lead vendors,

10

shared telephone numbers, and a prerecorded message personally recorded and uploaded by the sole owner of both entities. Am. Compl. ¶¶ 29, 35, 39-41.

Moreover, WLG's repeated complaint that Patterson has not "explicitly" alleged vicarious liability or an agency relationship, MTD at 10, misunderstands federal pleading standards. A complaint must plead facts, not legal theories, and dismissal for "imperfect statement of the legal theory supporting the claim asserted" is impermissible. *Johnson v. City of Shelby,* 574 U.S. 10, 11 (2014). And in the TCPA context specifically, courts apply a decidedly forgiving standard to allegations of agency at the pleadings stage, precisely because "the information necessary to connect all the players is likely in [the defendants'] sole possession." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014).

A plaintiff "is not required to plead all of its evidence in the complaint in order to plausibly allege agency," *Dolemba v. Ill. Farmers Ins. Co.,* 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016), and need only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Klassen v. Solid Quote LLC,* 702 F. Supp. 3d 1052, 1059 (D. Colo. 2023); *accord Smith v. Liberty Mut. Ins. Co.*, No. 1:20-CV-11583-ADB, 2021 WL 1581017, at *4 (D. Mass. Apr. 22, 2021) ("Vicarious liability under the TCPA is a fact-intensive inquiry that does 'not require the usual level of particularity' from the complaint.") (quoting *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 325 (D. Mass. 2020)). As the *Cunningham* Court observed in holding the pleadings sufficient against multiple law firms in a TCPA action as sufficient at the pleadings stage, even though some were not mentioned on the calls, to require more would effectively immunize savvier TCPA violators from liability, precisely the situation here. 2024 WL 3100773, at *13.

Mr. Patterson has pleaded the facts, common sole ownership and control, shared calling infrastructure subscribed in WLG's name, message content personally created and uploaded by WLG's principal, shared vendors and telephone numbers, and the law supplies the theories.

WLG's framing also collides with the plain text and structure of the TCPA itself. WLG's own authority establishes that "calls made by a third party on behalf of a company [are treated] as if the company itself made the call." *Klein v. Com. Energy, Inc.*, 256 F. Supp. 3d 563, 576 (W.D. Pa. 2017) (cited at MTD at 9-10). That is because TCPA liability has *never* been confined solely to the entity that physically dials the call. Congress wrote "on behalf of" liability directly into the statutory scheme for a reason, 47 U.S.C. § 227(c)(5) (providing a private right of action to any person who receives more than one call "by or on behalf of the same entity"), and the Supreme Court and the FCC have both confirmed that those same principles supply the rule of decision under § 227(b) as well. *Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 168 (2016) (noting the FCC "has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations"); *In re Dish Network*, 28 FCC Rcd. at 6578-79.

The operative question, in other words, is not whether Patterson can dismantle the corporate separateness of WLG and RLG through an equitable veil-piercing doctrine under state law. It is whether the calls were made by, on behalf of, or with the substantial involvement of WLG as required by the TCPA itself. On the facts alleged, WLG's account, WLG's platform, and prerecorded content personally created and uploaded by WLG's sole owner, that question cannot be answered in WLG's favor at the pleadings stage, or at all, without a jury.

WLG's reliance on deposition testimony from Nicholas Wajda disputing the integrated nature of the two firms only underscores why dismissal is premature. MTD at 5. That testimony creates a factual dispute. Rule 12(b)(6) requires this Court to accept Plaintiff's well-pled

allegations as true, not to resolve competing factual narratives in the defendant's favor. *See Twombly*, 550 U.S. at 570. Whether the facts ultimately satisfy the direct liability, vicarious liability, or on behalf of liability under the TCPA, or alter ego standards under state law, is a question for a more developed record. WLG's motion on these grounds should be denied.

Separate from the issue of ripeness, WLG's invocation of corporate veil-piercing as a defense is also a category error under the TCPA. Corporate veil piercing is an equitable doctrine designed to hold one entity liable for another's conduct by disregarding the legal separation between them. *See in re Moshannon Valley Citizens, Inc.*, No. 1:06-BK-00095-MDF, 2009 WL 522906, at *3 (Bankr. M.D. Pa. Feb. 25, 2009). It has no application here because Plaintiff does not seek to hold WLG liable for a third party's conduct. Plaintiff seeks to hold WLG liable for its own conduct as the subscriber of record for the ICE Mortgage Technology account through which the calls were transmitted. Am. Compl. ¶¶ 29-36, 41. The TCPA imposes liability on "any person" who makes or initiates a prohibited call, 47 U.S.C. § 227(b)(1), and the statute makes no distinction between individuals or entities acting in personal versus corporate capacities. *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 960 (8th Cir. 2019).

As another Court addressing the concept of corporate veil piercing in the TCPA has observed, Defendants who raise corporate veil-piercing in this posture quite literally "have the cart before the horse," since individual or entity liability under the TCPA flows from the defendant's own direct participation in the prohibited conduct, not from disregarding any corporate form. *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001). WLG here is the subscriber of record for the calling number and its sole owner personally recorded and uploaded the prerecorded messages used in the campaign, rendering WLG a direct initiator of the calls. Am. Compl. ¶¶ 29-36, 41. Any alter ego arguments should thus be summarily rejected.

13

Even taken on its own terms, WLG's veil-piercing analysis defeats itself. WLG argues that the alter ego factors "presuppose" a parent-subsidiary relationship and that the doctrine cannot apply because WLG does not own RLG, Nicholas Wajda does. MTD at 12-13. But WLG's own authority holds that the alter ego theory applies "where the individual or corporate owner controls the corporation to be pierced *and the controlling owner is to be held liable*." *Miners, Inc. v. Alpine Equip. Corp.*, 722 A.2d 691, 695 (Pa. Super. 1998) (emphasis original). Nicholas Wajda, the individual controlling owner of both firms, is a named defendant in this action. The Amended Complaint alleges that he is the sole owner of both WLG and RLG, that he personally directs the marketing of both, that he personally recorded and uploaded the prerecorded messages at issue, and that he caused the calls to be transmitted through the account of one firm for the ostensible benefit of the other. Am. Compl. ¶¶ 6-8, 25-27, 39-40. That is precisely the structure the piercing doctrine exists to address, since, when successfully established, liability runs from the offending conduct up to the common controlling owner and down to his commonly-owned affiliate. *See Mortimer v. McCool,* 255 A.3d 261 (Pa. 2021).

At bottom, Mr. Patterson was robocalled from WLG's account with ICE for the claimed benefit of RLG and Mr. Wajda, without his consent. In all events, and even if the Court looks to Pennsylvania's enterprise doctrine or to the alter ego factors WLG recites, which are inapplicable here because the TCPA expressly outlines the permissible theories of liability, the inquiry is fact-intensive, turns on evidence of how the entities actually operated, and is therefore ill-suited to resolution on a Rule 12(b)(6) motion or even at summary judgment. As a result, the motion ought to be denied.

14

**CONCLUSION**

For the foregoing reasons, Plaintiff Daniel Patterson respectfully requests that this Court deny Defendant Wajda Law Group's Motion to Dismiss in its entirety. Should this Court find any portion of the Amended Complaint deficient, Plaintiff requests that any dismissal be without prejudice and with leave to amend. *See* Fed. R. Civ. P. 15(a)(2).

RESPECTFULLY SUBMITTED AND DATED this July 3, 2026.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> Pa. Bar #333687
> Perrong Law LLC
> 1669 Edgewood Road, Suite 218
> Yardley, PA 19067
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com
>
> *Attorney for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Andrew Roman Perrong, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

DATED this July 3, 2026.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.

15