IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

DANIEL PATTERSON, individually and on behalf of a class of all persons and entities similarly situated,

        Plaintiff,

        v.

WAJDA LAW GROUP, APC,
RECOVERY LAW GROUP APC, and
NICHOLAS WAJDA,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 2:25-cv-01774-MRH

---

**REPLY BRIEF IN SUPPORT OF WAJDA LAW GROUP'S MOTION TO DISMISS DANIEL PATTERSON'S COMPLAINT PURSUANT TO FED. R. CIV. P. RULE 12(b)(6)**

Defendant Wajda Law Group, APC ("WLG"), by and through its attorneys, WADE CLARK MULCAHY LLP, hereby submits this Reply Brief in further support of its Motion to Dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6). WLG incorporates by reference all facts stated in its original Motion.

**ARGUMENT**

I.     **WLG Has Not Waived Its Right to Challenge the Claims Because the Amended Complaint Adds Context That Changes the Fundamental Nature of the Allegations Against WLG.**

In the Opposition to WLG's 12(b)(6) Motion to Dismiss, Plaintiff argues that WLG waived the opportunity to challenge the sufficiency of the amended pleading by not challenging the original complaint on the same grounds. In so arguing, Plaintiff claims that the Amended Complaint merely "flesh[ed] out pre-existing claims" and "did not add any new claims or theories

against WLG" such that the amended version of the complaint is "essentially identical" to the original. Plaintiff's Brief in Support of Response in Opposition to Defendant Wajda Law Group's Motion to Dismiss [hereinafter, "Opp."] at 4.

That characterization of how the Amended Complaint changes the overall picture of the case is both incomplete and inaccurate. First, Plaintiff alleges that the original Complaint alleged that WLG "was the subscriber and account holder of the ICE Mortgage Technology platform used to place the calls," which is not the case. *Id*; *see generally* Exhibit D.[1] The original complaint makes no reference to ICE Mortgage Technology, nor to WLG being the subscriber or account holder of record for any account. *See generally* Exhibit D. Further, the context added and addition of other defendants changes the nature of the claim beyond what has been suggested by Plaintiff's wording of the claims. It is true that the claim remains the "same" insofar that Plaintiff still asserts that WLG should be directly liable. However, claiming that WLG should be liable because WLG itself made and/or directed the call is fundamentally different from claiming that WLG should be liable because it was involved in an interaction with a different entity that made and/or directed the call.

WLG did not have the ability to raise the claims it now raises when the original complaint was filed. WLG could not have argued that Plaintiff failed to state a claim by failing to allege that WLG directly made (or directed on its own behalf) the calls at issue, because the original complaint made these allegations. *See* Exhibit D, ¶ 17, 19, 22, 49–50. WLG could also not have argued that Plaintiff failed to adequately allege a connection between WLG and Recovery Law Group such

---

[1] Unless otherwise noted, the Exhibits referenced throughout this Reply Brief refer to the Exhibits attached to WLG's Motion to Dismiss and accompanying Memorandum of Law.

that liability can be imposed on a party that did not do any relevant conduct because Recovery Law Group was not joined to the litigation at the time. *See generally* Exhibit D.

As such, WLG respectfully suggests that Plaintiff's waiver argument lacks merit, as the inclusion of additional parties, new factual allegations, and fundamental change of the nature of the claim for WLG's alleged liability plainly makes the Amended Complaint *not* "essentially identical" to the original, which is further supported by the fact that WLG now asserts arguments not available at the time of its response to the original complaint.

II.    **The Specific Facts Called Into Question are Appropriate for Resolution at this Stage of the Proceedings Because the Parties Engaged in a Specific Discovery Phase to Resolve this Precise Issue.**

WLG openly acknowledges that this type of issue is not typically resolved at the pleading stage. However, there is procedural history and context within the course of this litigation that render the situation somewhat atypical and justifies a similarly atypical method of resolution.

As discussed at length in the Oral Argument before this Court, there is a caveat baked into Fed. R. Civ. P. Rule 12 that allows the Court to consider external evidence on a 12(b)(6) motion to dismiss by adjusting the standard of review. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013); Fed. R. Civ. P. 12(d). While perhaps, as the Court posited, this may serve as a warning to be extra cautious when such a situation may arise, it is uniquely applicable to a case with a procedural history such as this one. When the Court orders a discovery phase that is specifically and narrowly targeted to address one single issue, discovery is elicited accordingly, and an Amended Complaint is filed based on that exact discovery, it is disingenuous to treat the Amended Complaint like it materialized out of thin air. WLG understands and accepts that a more stringent standard is imposed through its references to information elicited in discovery

that is external to the Amended Complaint, but WLG believes it necessary to do so to properly account for the procedural history and context out of which the Amended Complaint arises.

Plaintiff argues that issues of which entity placed the calls complained of are not appropriate for dismissal at the pleading stage because they are inherently fact-intensive inquiries. *See* Opp. at 6. However, one cannot ignore that, pursuant to this Court's instruction at the Rule 16 Conference, the parties engaged in a limited discovery phase that was targeted at eliciting facts to answer that exact question. If Plaintiff did not find facts sufficient to substantiate the claim as to which entity made the call during the discovery phase that was conducted, at Plaintiff's insistence, to answer that question and that question only, Plaintiff does not have sufficient facts to make a proper pleading as to WLG.

For example, Plaintiff's Opposition cites a number of cases[2] to support the notion that it is reasonable to infer that "the subscriber of the account and telephone number used to place the call…is the party that made the call." Opp. at 8. Plaintiff did indeed make that inference in the original Complaint by, based on the information it had at the time, naming WLG as the defendant and accusing WLG of making the call. *See generally* Exhibit D. After being informed that the inference was incorrect, and after conducting discovery to confirm, Plaintiff discovered that WLG did not place the call, which he then acknowledged in the Amended Complaint. *See* Exhibit A, *see also* Exhibit B, ¶ 37. Plaintiff also discovered that, while WLG is named as the subscriber of the account,[3] WLG does not itself use the account and is not the subscriber of the relevant phone number. *See* Exhibit A, 21:1–20; 24:13–25:1; 28:1–29:2; 32:15–20.

---

[2] Which WLG notes are from the Central District of California, the Northern District of Illinois, and the District of New Jersey, respectively.
[3] Which, again, was not a fact alleged in the original complaint.

A further distinction between the original Complaint and the Amended Complaint claims that the voicemail left identified the caller as "Nick with Wajda," while the Amended Complaint changes the identification to "Nicholas Wajda," based on Mr. Wajda's testimony. *See* Exhibit D, ¶ 20; Exhibit B, ¶ 22; Exhibit A, 14:23–15:16. Plaintiff argues repeatedly that the identity of Nicholas Wajda as the caller and his role as WLG's sole owner and principal is a reason for finding that WLG should be directly liable. *See generally* Opp. An inference that Mr. Wajda was referring to Wajda Law Group, based on mishearing the voicemail, may have been understandable in the context of the original complaint. However, that allegation has significantly less value when Plaintiff has been made aware that the caller identified himself as "Nicholas Wadja," not "Nick with Wajda"; Nicholas Wajda is *also* the sole owner and principal of Recovery Law Group ("RLG"); he recorded the message in his capacity as owner and principal of RLG; and he uploaded it to the software for RLG's use. *See* Exhibit A, 14:23–15:16; 9:7–15; 12:21–13:16; 32:15–20.

Therefore, Plaintiff has been made aware of facts that rebut his argument that the issue of which entity made the calls is inappropriate at this time, facts that rebut the inference that the caller is the subscriber and/or owner of the phone number, and facts that rebut the inference he continues to make regarding the significance of Nicholas Wajda being the owner and principal of WLG. While relying on said arguments and inferences may have been excusable in the original complaint where relevant factual context had not been established, it is plainly inapplicable now that such facts have been made known.

As for the substantive argument within the matter of which entity made the calls—just as Plaintiff argues that WLG is attempting to assert a novel limitation of the TCPA, Plaintiff here also attempts to assert a novel expansion of it. The TCPA, insofar as Plaintiff himself has cited, allows a finding of liability for those who (1) themselves made the calls, or (2) had such a high

level of involvement that it could be "deemed to have initiated the call through another." *See* Opp. at 7–8. Plaintiff cites no authority that suggests that a business should be held liable for a call made by a third-party vendor, on behalf of a different entity, for the benefit of that different entity, from which it stood to receive absolutely no benefit because the call was directed to an individual who categorically could not be a prospective client. *See* Memorandum of Law in Support of WLG's Motion to Dismiss [hereinafter "MTD"], at 8–9. Any connection that Plaintiff uses to assert that WLG has a sufficient level of involvement to justify a finding of liability is wrapped in language that is deeply evocative of theories of vicarious liability and the corporate veil, which is what triggered the analysis about which further discussion follows below.

### III.    The Facts Plaintiff Alleges Impose Liability on WLG Speak to Vicarious Liability of Nicholas Wajda as an Individual, Not WLG as a Separate Corporate Entity.

To the extent that Plaintiff raises the same argument with regard to this section again as to the factual nature of this issue: WLG reiterates that the procedural history of this case, particularly the limited discovery phase, suggests that a pleading lacking in factual foundation despite discovery targeted directly at eliciting the facts necessary to a sufficient claim shows that the claim itself is deficient. WLG's position is that Plaintiff did not allege facts giving rise to a plausible inference that WLG should remain potentially liable for the conduct of which Plaintiff complains, either by way of having a sufficiently high level of involvement in the conduct or by a theory of vicarious liability.[4]

---

[4] WLG notes again that Plaintiff, with regard to this section, cites mostly to cases from other Districts. In fact, out of 27 citations throughout the Opposition (excluding the Legal Standard section), thirteen cite to different states' District Courts, one cites to the 8th Circuit, two cite to the Eastern District of Pennsylvania, one cites to the Bankruptcy Court of the Middle District of Pennsylvania, and two cite to Pennsylvania state courts.

Having a shared owner cannot be a basis for finding a sufficient relationship or involvement, or else the entire purpose of the corporate veil would be moot. *See, e.g. Seven Springs Mountain Resort, Inc. on behalf of Sikirica v. Hess*, No. 3:21-CV-6, 2022 WL 1004178 (W.D. Pa. Apr. 4, 2022) (setting out several factors that go into assessing whether it is appropriate to pierce the corporate veil, of which shared ownership is not even included because it is a basic presupposition to this analysis even taking place). Using the same vendor is likewise insufficient, as the vendor that WLG and RLG share also has completely separate, unrelated clients, who cannot reasonably be said to be proper parties simply by virtue of hiring the same vendor. The fact that RLG paid WLG back for the use of the ICE Mortgage Technology account suggests efforts to keep the entities separate and distinct, as entities that were truly intertwined would share the same metaphorical pockets and not be concerned with which entity paid the bill. The shared telephone number that appears on both firms' websites directs to a third-party line that handles the intake process and assigns prospective clients to either firm depending on their geographic location. *See* Exhibit A, 18:15–24. The messages at issue were recorded by RLG's owner to be used by RLG to reach RLG's prospective clients, facts that are conveniently omitted throughout Plaintiff's multiple recitations. *See id* at 12:17–13:5.

While WLG declines to comment on the strength or merits of such arguments, the arguments Plaintiff raises in his Opposition speak more so to the liability of Nicholas Wajda as an individual. Nicholas Wajda in his individual capacity has counsel, and the claims against him may be addressed in due course. However, WLG notes that, to the extent that Plaintiff may argue that liability flows from Nicholas Wajda as principal to WLG as an entity, it would constitute reverse piercing of the corporate veil, which is applied even more conservatively than standard veil

piercing, as "only 'exceptional circumstances' warrant granting this 'unusual' remedy." *In re Blatstein*, 192 F.3d 88, 100–01 (3d Cir. 1999) (quoting *In re Mass*, 178 B.R. 626 (M.D. Pa. 1995)).

To the extent that the claims concern WLG as a separate corporate entity, the grounds above provide the entirety of Plaintiff's argument that WLG, as its own legally distinct corporate entity, has a sufficient connection to the alleged misconduct to impose liability. Thus, as it stands, Plaintiff fails to state with sufficient specificity on what grounds a California-based law firm that did not make, direct, or benefit from any calls could be held directly or vicariously liable under the TCPA.

## CONCLUSION

For the reasons set forth above, Wajda Law Group, APC respectfully requests that this Court grant its motion to dismiss the Amended Complaint with prejudice insofar as it concerns WLG, and grant WLG such other relief as this Court deems equitable and just.

Dated: Philadelphia, PA
         July 16, 2026

Respectfully Submitted,

WADE CLARK MULCAHY LLP

*/s/ Robert J. Cosgrove*
Robert J. Cosgrove, Esq.

*/s/ Simone Henderson*
Simone Henderson, Esq.