# EXHIBIT A

KAUFMAN DOLOWICH

Kaufman Dolowich LLP
One Batter Park Plaza, 11th Floor
Suite 1120
New York, NY 10004

Ryan Turner, Esq.
Email: ryan.turner@kaufmandolowich.com

Telephone: (212) 485-9600
Facsimile: (212) 485-9700

June 16, 2026

**VIA E-MAIL: Nick@wajdalawgroup.com**

Nicholas Wajda, Esq.
Wajda Law Group, APC
400 Continental Blvd., 6th Flr.
El Segundo, CA 90245

| Re: | | |
|---|---|---|
| | Assured: | Wajda Law Group, APC |
| | Claimant: | Daniel Patterson |
| | Date of Loss: | November 28, 2025 |
| | Policy Type: | Lawyers Professional Liability |
| | Policy No.: | SYN-116738 |
| | Policy Period: | August 1, 2025 to August 1, 2026 |
| | Policy Limits: | $500,000 per Claim/ $1,000,000 in the Aggregate |
| | Retention: | $10,000 |
| | KD File No.: | 303125-0053 |

Dear Mr. Wajda:

On behalf of certain Underwriters at Lloyds ("Underwriters"), this will acknowledge receipt of various documents and correspondence, including a purported class action complaint filed by Daniel Patterson ("Mr. Patterson") in the United States District Court for the Western District of Pennsylvania, against Wajda Law Group, APC (the "Firm" or the "Assured"), styled, *Daniel Patterson, individually and on behalf of all others similarly situated v. Wajda Law Group, APC*, Case No. 2:25-cv-01774 (the "Class Action"). As you may be aware, Underwriters issued a Lawyer's Liability Policy (the "Policy") to the Firm, which is a claim made and reported policy.

Please allow this letter to serve as Underwriters' supplementary coverage position, as additional facts have come to our attention which appear to preclude coverage for this matter under the Policy. In considering this position, we have carefully reviewed the Policy, and the documents and information provided to date. *For the reasons discussed more fully below, there is no coverage for this matter under the Policy*. The purpose of this letter is to further explain Underwriters' coverage determination.

## I. Background

On November 14, 2025, Daniel Patterson, a Pennsylvania resident, filed the above referenced Class Action, alleging violations of the Telephone Consumer Protection Act (the

"TCPA"), 47 U.S.C. § 227(b). More specifically, Mr. Patterson alleges that the Firm used artificial or prerecorded voice messages to place unsolicited telemarketing calls to his cellphone without his prior express consent in violation of the TCPA. Mr. Patterson further alleges that his cellphone number is a personal, non-commercial number and that he has never been a client of the Firm, never consented to receive calls from the Firm, and never conducted business with the Firm.

According to the Class Action, Mr. Patterson received at least five prerecorded voicemail messages from the Firm advertising its legal services. Mr. Patterson asserts that the first two calls were made on or about August 20, 2024, and that the remaining three calls were made on or about October 7, 2025. Mr. Patterson alleges that the calls were made using technology capable of generating prerecorded or artificial voice messages and constituted non-consensual telemarketing solicitations.

Mr. Patterson claims that the alleged calls invaded his privacy, caused annoyance and disturbance, temporarily deprived him of the use of his telephone, and constituted an unlawful intrusion upon his seclusion. Mr. Patterson further alleges that the same conduct was directed at numerous other individuals nationwide.

In the Class Action Complaint, Mr. Patterson asserts a singular cause of action for violations of the TCPA, brought on behalf of himself and a proposed nationwide class of individuals who allegedly received similar prerecorded or artificial voice calls from the Firm within four years preceding the filing of the Complaint. Mr. Patterson seeks statutory damages of $500 per call, treble damages of up to $1,500 per call for willful or knowing violations, injunctive relief prohibiting future prerecorded calls, certification of a class, and attorneys' fees and costs.

It is our understanding that the Assured first received notice of the Class Action on November 28, 2025.

On April 30, 2026, Nicholas Wajda attended a deposition in connection with the Class Action.[1] According to the corresponding deposition transcript, Nicholas Wajda is the sole owner of both the Firm, Wajda Law Group, APC, as well as another unrelated entity, Recovery Law Group. (*See*, N. Wajda Dep., at 9:7-14). The Firm operates exclusively in California, while Recovery Law Group operates in about 38 different states, including Pennsylvania. (*See*, *Id*. at 8:4-10, 9:3-7). Nicholas Wajda testified that Recovery Law Group covered the entire costs of, and used the services of, ICE Mortgage Technology. (*See*, *Id*. 32:15-25). ICE Mortgage Technology is the entity which purportedly contacted Mr. Patterson, leaving the messages at issue in the Class Action, which were prerecorded by Nicholas Wajda. (*See*, *Id*. at 12:21-13:16, 32:15-25).

Nicholas Wajda further testified that the correct Defendant in the Class Action is Recovery Law Group, and not the Firm, as the Firm does not practice outside of California. (*See*, *Id*. at 32:2-8, 33:9-16). The number which allegedly contacted Mr. Patterson was (724) 246-6670, a Pennsylvania phone number. (*See*, *Id*. at 26:14-19,33:22-34:3). Mr. Patterson was contacted by a

[1] We received a copy of the corresponding deposition transcript on May 14, 2026.

Pennsylvania number as Recovery Law Group operates in Pennsylvania and used the account with ICE Mortgage Technology which left the prerecorded messages. (See, *Id*. at 34:12-20).

On May 22, 2026, Mr. Patterson filed an amended complaint, adding Nicholas Wadja and Recovery Law Group as defendants (the "Amended Complaint"). The Amended Complaint asserts that Nicholas Wajda left the relevant voicemails to generate business and direct interested clients to Recovery Law Group. (See, Amended Complaint at ¶ 26). While the Amended Complaint asserts that Wajda Law Group was the holder of the ICE Mortgage Technology account, Recovery Law Group "was the practical operating entity for whose bankruptcy and related legal services for which the calls were made, whose personnel or systems used the ICE Mortgage Technology account, whose telephone number was provided in the prerecorded message, and whose costs were paid." (See, *Id*. at ¶ 34). Further the Amended Complaint asserts that "Recovery Law Group is directly liable because the calls were made by it, for it, for its benefit, paid for by it, and to advertise its bankruptcy and debt relief legal services." (See, *Id*. at ¶ 37). The Amended Complaint merely names Wajda Law Group as the entity listed as the holder of the ICE Mortgage Technology account. (See, *Id*. at ¶ 38).

## II. **The Policy**

The Policy, bearing Policy Number SYN-116788, was issued to the Assured on a claims made and reported basis for the POLICY PERIOD beginning on August 1, 2025, to August 1, 2026. The Policy has a limit of liability of $500,000 for each claim and $1,000,000 in the aggregate. The Policy has a deductible of $10,000 for each claim.

The Policy provides the following:

> In consideration of the payment of the premium and in reliance upon the statements in the application attached hereto and made a part of hereof, and subject to all of the terms of the policy, the Underwriters designated in the Declarations (hereinafter "the Underwriters") agrees with the Named Insured as stated in the Declarations (hereinafter "Named Insured") as follows:

The Policy's Insuring Agreement provides that:

> The Underwriters will pay on behalf of the INSURED all sums in excess of the deductible and up to the applicable limits of liability that the INSURED becomes legally obligated to pay as DAMAGES, as well as CLAIMS EXPENSES as a result of any CLAIM first made against the INSURED during the POLICY PERIOD, and reported to the Underwriters in writing during the POLICY PERIOD by reason of any act, error, omission or PERSONAL INJURY arising out of PROFESSIONAL SERVICES rendered or that should have been rendered by the INSURED or by any person

---

> for whose negligent act, error, omission or PERSONAL INJURY the INSURED is legally liable, PROVIDED ALWAYS THAT such act, error, omission or PERSONAL INJURY occurs:
>
> A. during the POLICY PERIOD; or
>
> B. on or after to the RETROACTIVE DATE if any, and prior to the effective date of this policy.

The Policy's Defense, Investigation and Settlement of Claims section provides, in relevant part, as follows:

As respects such insurance as is afforded by this policy, the Underwriters will:

A. have the right and duty to defend, including selection of counsel, mediators and/or arbitrators, in the INSURED's name and on the INSURED's behalf any CLAIM for DAMAGES against the INSURED, even if such CLAIM is groundless, false or fraudulent. The Underwriters have the right to make such investigation and negotiation of any CLAIM as they deem expedient. The Underwriters have no duty to defend any CLAIM to which this insurance does not apply; and

***

A CLAIM means:

> a written demand received by the INSURED for DAMAGES, including, but not limited to, the service of suit or institution of arbitration proceedings against the INSURED. A CLAIM shall be deemed to be made on the earliest date written notice of the CLAIM or POTENTIAL CLAIM is received by any INSURED.

INSURED is defined, in pertinent part, to include:

> A. The Named Insured shown in the Declarations and any PREDECESSOR FIRM thereof;
>
> B. any lawyer or professional corporation who was or is a partner, officer, director or employee of the Name Insured, but only as respects PROFESSIONAL SERVICES rendered on behalf of the Named Insured or any PREDECESSOR FIRM thereof;

***

---

DAMAGES means:

> the monetary portion of any judgment, award or settlement, provided always that DAMAGES does not include:
>
> A. punitive, exemplary, or the multiple portion of multiplied DAMAGES; or
>
> B. sanctions, fees, fines, taxes or penalties imposed by law; or
>
> C. fees paid or owed as remuneration for legal services; or
>
> D. return of fees, costs and/or expenses paid to any INSURED; or
>
> E. amounts incurred in connection with complying with declaratory judgments/orders or injunctive relief; or
>
> F. matters that are uninsurable under the law pursuant to which this policy will be construed.

The Policy's Conditions Clause I. Insured's Duties in the Event of a Claim, as amended by Endorsement, provides:

> A. If a CLAIM is made against the INSURED, the INSURED must give immediate written notice to the Underwriters. Notice should include every demand, notice, summons or other process received by the INSURED;
>
> B. The INSURED must cooperate with the Underwriters in the defense, investigation and settlement of any CLAIM. Upon the Underwriter's request, the INSURED must submit to examination or questioning, under oath, if requested, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence and obtaining the attendance of witnesses in the conduct of suits. If such attendance is at the Underwriters' request, the Underwriters shall reimburse the INSURED for loss of earnings solely of an INSURED who is a Lawyer, upon written request with satisfactory written proof of payment, for actual loss of earnings and reasonable expenses due to such attendance up to a maximum of $500 for each day in the aggregate for all INSUREDS subject to a total maximum amount of $15,000 for the POLICY PERIOD. Such payments hereunder are not subject to the Deductible and are payable by the Underwriter in addition

> to the Limits of Liability specified in the Declarations to this policy.
>
> Except as provided in the above paragraph, expenses incurred by the INSURED in assisting and cooperating with the Underwriter are not reimbursable under this Policy.
>
> C. The INSURED must assist the Underwriters in effecting any rights of indemnity, contribution or apportionment available to the INSURED or the Underwriters; and
>
> D. The INSURED shall not, without prior written consent of the Underwriters, make any payment, admit liability, settle any CLAIM, assume any obligations, agree to mediation, arbitration or any similar means of resolution of any dispute, waive any rights or incur any CLAIMS EXPENSES on behalf of the Underwriters.

The Policy's Exclusions provides the following:

> This policy does not apply to any CLAIM:
>
> C. based upon or arising out of the INSURED's activities as an officer, director, partner, manager or employee of any corporation, operation or organization other than the Named Insured
>
> D. based upon, arising out of or in connection with the conduct of any business enterprise other than the Named Insured (including the ownership, maintenance or care of any property in connection therewith)
>
> a. which is or was more than 5% owned by any INSURED; or
> b. in which any INSURED is or was a partner; or
> c. which is or was indirectly controlled, operated or managed by any INSURED either individually or in a fiduciary capacity.

The Policy also contains a LIMITED COVERAGE FOR CYBER CLAIMS ARISING FROM PROFESSIONAL SERVICES Endorsement, which provides the following:

> In consideration of the premium charged for the Policy, it is hereby understood and agreed that

1. This policy excludes coverage for any actual or alleged CLAIM, DAMAGES, and/or CLAIMS EXPENSES, of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with:

   A. a CYBER INCIDENT, unless subject to paragraph 2. below; or

   B. a CYBER ACT, unless the CYBER ACT results in a CYBER INCIDENT that is subject to paragraph 2. below; or

   C. a DATA BREACH (including notification costs, crisis consultancy costs, credit monitoring expenses, cost or expense for replacement of actual credit or payment cards, forensic expenses, public relations expenses or legal advice and services), except to the extent the DATA BREACH constitutes an otherwise covered CYBER INCIDENT that is subject to paragraph 2. Below matters that are uninsurable under the law pursuant to which this policy will be construed.

   Notwithstanding any other provision contained in this endorsement, in no event shall this policy cover the INSURED'S own loss, fine, penalty, cost or expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with a CYBER INCIDENT, including, but not limited to, any loss, liability, claim, cost or expense of whatsoever nature incurred by the INSURED to restore, recover or replace COMPUTER SYSTEMS or ELECTRONIC DATA that have been damaged, destroyed, deleted or corrupted as a result of a CYBER ACT or CYBER INCIDENT including, but not limited to, any ransom payment.

2. Subject to all the terms, conditions, limitations and exclusions of this policy or any endorsement thereto, paragraph 1.A. shall not apply to a CLAIM arising out of an actual or alleged act, error, omission or PERSONAL INJURY arising out of PROFESSIONAL SERVICES rendered or should have been rendered by the INSURED, or any person for whose negligent act, error, omission or PERSONAL INJURY the INSURED is legally liable, involving access to, processing of, use of or operation of a COMPUTER SYSTEM or ELECTRONIC DATA owned by or under the operational control of the INSURED, or a party acting on behalf of the INSURED, provided that:

A. coverage for such CLAIM shall at all times be excess to any other valid and collectible insurance, including but not limited to any policies listed below; and

B. there is no coverage where the CLAIM results from or arises out of a failure or interruption of service provided to the INSURED, or a party acting on behalf of the INSURED, by an internet service provider, telecommunications provider, cloud computing provider or utility provider.

Definitions:

1. COMPUTER SYSTEM, whenever used in this policy means any computer, hardware, software, communications system, electronic device (including, but not limited to, smart phone, laptop, tablet, wearable device), server, cloud or microcontroller including any similar system or any configuration of the aforementioned and including any associated input, output, data storage device, networking equipment or back up facility, owned or operated by the INSURED or any other party.

2. CYBER ACT, whenever used in this policy means an unauthorised, malicious or criminal act or series of related unauthorised, malicious or criminal acts, regardless of time and place, or the threat or hoax thereof involving access to, processing of, use of or operation of any COMPUTER SYSTEM.

3. CYBER INCIDENT, whenever used in this policy means:

   A. any error or omission or series of related errors or omissions involving access to, processing of, use of or operation of any COMPUTER SYSTEM; or

   B. any partial or total unavailability or failure or series of related partial or total unavailability or failures to access, process, use or operate any COMPUTER SYSTEM.

4. DATA BREACH, whenever used in this policy means:

   A. the theft, loss, access to, acquisition of, or unauthorized or unlawful use or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit or payment card information, health information, biometric data or any other type of non-public

information, involving access to, processing of, use of or operation of any COMPUTER SYSTEM; or

B. the violation of any statute, regulation, common-law, or any other law regulating or protecting access to collection, use or disclosure of, or failure to protect any non-public confidential or personal information in the form of ELECTRONIC DATA.

5. ELECTRONIC DATA, whenever used in this policy means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

The Policy's Other Insurance provision, as amended by Endorsement, provides:

> If there is other insurance applicable to a CLAIM covered by this policy, this policy shall be excess insurance over and above the applicable limits of liability of all such other insurance unless such other insurance is written only as specific excess insurance over the limits of liability provided in this policy.
>
> If any DAMAGES or CLAIMS EXPENSES covered under this endorsement are insured under any other valid and collectible insurance available to any independent contractor, including any self-insured retention or deductible portion thereof, then the Underwriters' liability under this Policy shall be no greater than the proportion of such DAMAGES or CLAIMS EXPENSES payable if each insurer contributes an equal share until either the share of each insurer equals the lowest applicable Limit of Liability under any one policy or the full amount of covered DAMAGES or CLAIMS EXPENSES is paid. With respect to any amount of covered DAMAGES or CLAIMS EXPENSES not so paid, the remaining insurers shall then continue to contribute equally in satisfaction of the remaining amount of DAMAGES or CLAIMS EXPENSES until each insurer has paid its Limit of Liability or the full amount of DAMAGES or CLAIMS EXPENSES is paid, whichever occurs first.

The Policy's Entire Agreement provision provides as follows:

> By acceptance of this policy, this INSURED reaffirms as of the effective date of this policy that A. the statements in the application attached hereto and made a part hereof are the INSURED's

> agreements and representations; B. this policy is issued in reliance upon the truth and accuracy of such representations; and C. this policy embodies all agreements between the INSURED and the Underwriters or any of their agents relating to this insurance.

In the relevant application annexed to the Policy, Nicholas Wajda, makes the following representations on behalf of Wajda Law Group APC:

> 5. For any business enterprise, other than civic, charitable, or non-profit, does any lawyer:
>
>    a. Have any position as a director/officer/trustee or partner?
>
>       Yes _ No X
>
> ***
>
> The undersigned represents that the statements set forth herein are true, complete and accurate and that there has been no attempt at suppression or misstatement of any material fact known, or that should be known, and agrees that this application along with all supplements and attachments and all previous applications, supplements and attachments will become the basis of any coverage and part of any policy that may be issued by the Company.

## III. Coverage Determination

Underwriters recognize that the allegations against the Firm have not been proven at this time and you should not interpret the following discussion as a suggestion by Underwriters that any of the allegations have any legal or factual merit. Nonetheless, Underwriters believe it is prudent to identify for you the issues which give rise to this reservation of rights.

We note that it appears that the Class Action arose out of the operations of Recovery Law Group, and not the Firm. Pursuant to Nicholas Wajda's testimony in his April 30, 2026 Deposition, the correct Defendant in the Class Action is Recovery Law Group, and not the Firm, as the Firm does not practice outside of the state of California. Instead, Mr. Patterson, a Pennsylvania resident, was contacted by a Pennsylvania number on behalf of Recovery Law Group, which operates in Pennsylvania. While Nicholas Wajda is the owner of both the Firm and Recovery Law Group, Recovery Law Group is not an INSURED under the Policy. Likewise, Nicholas Wajda does not constitute an INSURED under the Policy to the extent that he is acting on behalf of Recovery Law Group.

Furthermore, the Amended Complaint is asserted against Wajda Law Group merely as the holder of the ICE Mortgage Technology account used by Recovery Law Group. According to the Amended Complaint, Recovery Law Group was the entity for whose bankruptcy and related legal services for which the calls were made, whose personnel or systems used the ICE Mortgage Technology account, whose telephone number was provided in the prerecorded message, and paid

---

the relevant costs. The messages left by Nicholas Wajda were related to Recovery Law Group's services, and not Wajda Law Group's services.

Underwriters note that coverage under the Policy is contigent on the existence of a CLAIM arising out of PROFESSIONAL SERVICES rendered or that should have been rendered by the INSURED. Pursuant to Nicholas Wajda's deposition testimony as well as the Amended Complaint, this matter does not appear to concern PROFESSIONAL SERVICES rendered or that should have been rendered by the INSURED, as Recovery Law Group does not constitute an INSURED under the Policy. Therefore, it does not appear that the Insuring Agreement is triggered in connection with the Class Action, including the Amended Complaint.

Even if the Insuring Agreement were triggered, which it is not, coverage for this matter is further precluded under the Policy, pursuant to Exclusion C and Exclusion D.

Pursuant to Exclusion C, no coverage is available under the Policy for any CLAIM based upon or arising out of the INSURED's activities as an officer, director, partner, manager or employee of any corporation, operation or organization other than the Named Insured. Nicholas Wajda is the owner of both the Firm as well as another unrelated entity, Recovery Law Group. As previously noted, Nicholas Wajda has testified that Recovery Law Group is the correct Defendant in the Class Action, as the Firm exclusively operates in California. Mr. Patterson, a Pennsylvania resident, was contacted on behalf of Recovery Law Group, which operates in Pennsylvania. Here, the Class Action as well as the Amended Complaint concern the messages prerecorded by Nicholas Wajda in his capacity as the owner of Recovery Law Group. Therefore, coverage for the Class Action, including the Amended Complaint, is further precluded, pursuant to Exclusion C.

Next, Exclusion D precludes coverage for any CLAIM based upon, arising out of or in connection with the conduct of any business enterprise other than the Named Insured which is or was more than 5% owned by any INSURED; or in which any INSURED is or was a partner; or which is or was indirectly controlled, operated or managed by any INSURED either individually or in a fiduciary capacity. Here, as previously noted, according to Nicholas Wajda's testimony, the Class Action concerns the activities of Recovery Law Group, and not the Firm. The Firm operates exclusively out of California. Mr. Patterson, a Pennsylvania resident, was contacted on behalf of Recovery Law Group, which operates in Pennsylvania. INSURED is defined in part to include any lawyer or professional corporation who was or is a partner, officer, director or employee of the Named Insured. Nicholas Wajda is the sole owner of both the Firm and Recovery Law Group. As the Class Action as well as the Amended Complaint arises out of the conduct of Recovery Law Group, which is owned and operated by Nicholas Wajda, coverage for the Class Action is further precluded, pursuant to Exclusion D.

Further, Underwriters reserve all rights to further disclaim coverage for the Class Action, to the extent that it concerns a CYBER INCIDENT and/or a CYBER ACT, as set forth in the LIMITED COVERAGE FOR CYBER CLAIMS ARISING FROM PROFESSIONAL SERVICES Endorsement.

While Underwriters have the right and duty to defend, including selection of counsel, mediators and/or arbitrators, in the INSURED's name and on the INSURED's behalf any CLAIM

for DAMAGES against the INSURED, Underwriters have no duty to defend any CLAIM to which this insurance does not apply. As there is no coverage for the Class Action, including the Amended Complaint, for the reasons set forth above, Underwriters does not have a duty to defend this matter.

Please note that Underwriters will agree to pay CLAIMS EXPENSES incurred in connection with this matter up and until the date of this letter (June 16, 2026). However, Underwriters will **not** provide any coverage for any other amounts, including both CLAIM EXPENSES and/or DAMAGES, incurred on or after June 16, 2026.

Last, Underwriters notes that, in the application annexed to the Policy, Nicholas Wajda, on behalf of the Firm, represented that himself and Michael Reid (i.e., the lawyers of the Firm listed on the application), do **not** hold any position as a director or officer of any business enterprise. However, Nicholas Wajda testified that he is the sole owner of Recovery Law Group. Therefore, contrary to Nicholas Wajda's representation on the application annexed to the Policy, it appears that a lawyer of the Firm, namely, Nicholas Wadja himself, is a director or officer of another business enterprise, Recovery Law Group. The Policy is written in consideration of the payment of the premium and in reliance upon the statements in the application attached to the Policy and made a part of hereof, and subject to all of the terms of the policy. Further, pursuant to the Entire Agreement Section of the Policy, the INSURED reaffirms as of the effective date of this policy that A. the statements in the application attached hereto and made a part hereof are the INSURED's agreements and representations; B. this policy is issued in reliance upon the truth and accuracy of such representations. Underwriters reserve their rights to rescind the Policy, based upon the misrepresentations made on behalf of the Firm in the application.

As the Class Action concerns the conduct by and on behalf of Recovery Law Group, we recommend reporting this matter under any insurance policy available to Recovery Law Group.

## CONCLUSION

Please be advised that Underwriters have determined that there is no coverage available to the Firm, Nicholas Wajda and/or Recovery Law Group for this matter. Accordingly, Underwriters will neither defend nor indemnify the Firm in connection with the allegations being made by or on behalf of Mr. Patterson.

Based on the foregoing and consistent with standard practices in these matters, Underwriters reserve all of their rights and defenses under the Policy and available at law with respect to this matter. Nothing herein shall be construed as a waiver of any rights or defense that Underwriters now have or hereafter may have under the Policy or at law. Additional facts may come to our attention in the future that could further limit, restrict or exclude coverage in this matter. The Insured should continue to protect its interests without reference to the Policy.

Pursuant to the California Code of Regulations, Title 10, Chapter 5, Subchapter 7.5: Fair Claims Settlement Practices Regulations, you may have this matter reviewed by the California Department of Insurance, located at 300 South Spring Street, Los Angeles, California 90013. The phone number is (800) 927-4357 or (213) 346-6464.

If you have any questions or concerns regarding Underwriters' coverage analysis, we invite you to contact the undersigned. If you believe that Underwriters' coverage analysis set forth in this letter is incorrect, we also invite you to submit any additional materials or information that you believe supports a contrary conclusion.

Very truly yours,

KAUFMAN DOLOWICH LLP

/s/ Ryan Turner

Ryan Turner

cc: (via email)
Robert Cosgrove, Esq., Wade Clark Mulcahy LLP, cosgrove@wcmlaw.com